**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

RUSHDY HAUTER,

        Plaintiff,

-against-          COMPLAINT   1:19-cv-7036

HSBC BANK USA, NATIONAL ASSOCIATION,

        Defendant.

## PLAINTIFF'S COMPLAINT

Plaintiff, RUSHDY HAUTER ("Plaintiff"), by and through his attorneys, Hormozdi Law Firm, LLC, alleges the following against Defendant, HSBC BANK USA, NATIONAL ASSOCIATION ("Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, *et seq.* ("TCPA").

### JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

4. Venue and personal jurisdiction in this District are proper because the Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

5. Plaintiff is a natural person residing in the Borough of Brooklyn, City of New York, Kings County, State of New York.

6. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant is a nationally chartered bank and credit card issuer with its headquarters in the City of Tysons, Fairfax County, Commonwealth of Virginia.

9. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. In or around November 2018, Defendant began calling Plaintiff on Plaintiff's cellular telephone, 347-524-1374, in an attempt to collect a debt.

12. Defendant calls Plaintiff from several numbers, including 800-524-9686, which is one of the many telephone numbers used by Defendant.

13. In or around March 2019, Plaintiff spoke to Defendant's collectors several times and told Defendant's collectors to stop calling Plaintiff.

14. In or around March 2019, Plaintiff told Defendant during an online chat session that Plaintiff did not want to talk to Defendant on the phone.

15. Despite Plaintiff's requests that Defendant stop calling him, Defendant continued to call Plaintiff unabated in an attempt to collect on the alleged debt.

16. When Plaintiff answered Defendant's calls, he was greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

17. When Plaintiff answered Defendant's calls, he was greeted by a message spoken by a pre-recorded or artificial voice. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

18. Defendant calls Plaintiff at an annoying and harassing rate.

19. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

20. Defendant has never had Plaintiff's prior express consent to call his cellular telephone with an automatic telephone dialing system or a pre-recorded voice or an artificial voice.

21. Even if Defendant somehow had Plaintiff's consent, such consent was revoked when Plaintiff told Defendant's collectors to stop calling him.

22. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

23. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

24. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

25. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

26. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

27. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

28. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

29. The telephone dialer system Defendant used to call Plaintiff's cellular telephone select telephone numbers to be called according to a protocol or strategy entered by Defendant.

30. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

31. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

32. The dead air that the Plaintiff experienced on the calls that he received is indicative of the use of an automatic telephone dialing system.  This "dead air" is commonplace with autodialing and/or predictive dialing equipment.  It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated.  Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff.  The dead air is essentially the autodialer holding the calls it

placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

33. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
   e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

34. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice without prior express consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, RUSHDY HAUTER, respectfully requests judgment be entered against Defendant, HSBC BANK USA, NATIONAL ASSOCIATION, for the following:

35. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

36. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

37. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

38. Any other relief that this Honorable Court deems appropriate.

DATED:  December 16, 2019          Respectfully submitted,
                                   HORMOZDI LAW FIRM, LLC

                              By: /s/ Shireen Hormozdi
                                   Shireen Hormozdi
                                   Hormozdi Law Firm, LLC
                                   1770 Indian Trail Lilburn Road, Suite 175
                                   Norcross, GA 30093
                                   Tel: 678-395-7795
                                   Fax: 866-929-2434
                                   shireen@agrusslawfirm.com
                                   shireen@norcrosslawfirm.com
                                   Attorney for Plaintiff